**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
**at New Haven**

**Case No. 3:20-cv-00353-JAM**

**In re: JOHN ALAN SAKON**
**Debtor-Appellant**

**Vs.**

**A&F Main Street Associates, LLC**
**Creditor-Appellee**

**<u>APPELLANT'S BRIEF</u>**

**Appeal of the Decision of the**
**Bankruptcy Court of Hartford**
**Denying Debtor's Motion for Extension of Time**
**To Accept or Reject Lease**
**DOCKET NO. 19-21619 [85] [129]**

**May 15, 2020**

By: _John Sakon_
_____
John Alan Sakon, Pro Se
82 Folly Brook Lane
Manchester, CT 06040
Tel: (860) 793-1000
Fax: (860) 675-4600
Email: johnsakon@sakon.biz

# **Table of Contents**

|      |                                                             |         |
|------|-------------------------------------------------------------|---------|
| I.   | **Table of Authorities Cases, Statutes and References**     | **P. 3**|
| II.  | **Jurisdictional Statement**                                | P. 5    |
| III. | **Statement of Issues Presented**                           | P. 6    |
| IV.  | **Statement of the Case**                                   | P. 8    |
| V.   | **Background**                                              | P. 11   |
| VI.  | **Summary of Argument**                                     | P. 14   |
| VII. | **Argument**                                                | P. 17   |
| VIII.| **Conclusion**                                              | P. 34   |
| IX.  | **Certificate of Compliance**                               | P. 36   |
| X.   | **Notice and Certification**                                | P. 36   |
| XI.  | **Appendix**                                                |         |

## I.   <u>Table of Authorities Cases, Statutes and References</u>

*In re American Healthcare Mgmt., Inc.,* 900 F.2d 827, 830 (5th Cir. 1990) Page 18

*In re. Burger Boys, Inc.,* 94 F.3d 755, 761                    Page 18

*In re Continental Airlines,* 981 F.2d 1450, 1459-60 (5th Cir. 1990) Page 31

<u>In re Channel Home Ctrs., Inc.,</u> 989 F.2d 682 (3d Cir. 1993), <u>cert. denied,</u> 114 S. Ct. 184 (1993).                    Page 18, 19

*Matter of Curio Shoppes, Inc.,* 55 B.R. 148, 152 (Bankr.D.Conn.1985) Page 26

*In re Diamond Mfg. Co., Inc.*, 164 B.R. 189, 197-99 (Bankr. S.D. Ga. 1994).                    Page 34

<u>Eastport Assocs. v. City of Los Angeles</u> (In re Eastport Assocs.), 935 F.2d 1071 (9th Cir. 1991)                    Page 31

Engel HJ, et al.  *European Journal Clinical Microbiology Infectious Diseases.* 2009 Jul.  28 (7): 821-4.                    Page 8, 17

*In Re Foote*, 277 B.R. 393 (Bankr. E.D. Ark. 2002)       Page 24,27

*F.B. Fountain Co. v. Stein,* 97 Conn. 619, 626-27, 118 A. 47 (1922) Page 32

*Galvin v. Simons,* 128 Conn. 616, 620, 25 A.2d 64 (1942) Page 33

*In Re Gromyko, Inc.*, 142 B.R. 20 (Bankr. D.R.I. 1992)    Page 23

*Housing Authority v. Hird,* 13 Conn.App. 150, 155 (1988) Page 20

*In Re Island Helicopters, Inc.*, 211 B.R. 453 (Bankr. E.D.N.Y. 1997) Page 24

*In Re Issa Corp.*, 142 B.R. 75 (Bankr. S.D.N.Y. 1992)     Page 23

*In re Kong,* 162 B.R. 86,91 (Bankr. E.D.N.Y. 1993).         Page 17

*In re Lakes Region Donuts, LLC,* 2014 Bankr. LEXIS 1183. *13 (Bankr. D.N.H. 2014)                              Page 22

*In re Masterworks, Inc.* 94 B.R. 262,267 (Bankr. C. Conn. 1988) Page 25

*In re Modern Textile, Inc.,* 900 F.2d 1184, 1191 (8th Cir. 1990)  Page 32

Moody v. Amoco Oil Co., 734 F.2d 1200 (7th Cir.), cert. denied, 469 U.S. 982 (1984)                              Page 33

*Nicoli v. Frouge Corp.,* 171 Conn. 245, 247, 368 A.2d 74 (1976) Page 33

*In Re Neville*, 118 B.R. 14 (Bankr. E.D.N.Y. 1990)         Page 23

*Presidential Village, LLC v. Melissa PHILLIPS et al.* 325 Conn. 394, 397, 158 A.3d 772 (2017)                              Page 20

*R & R of Connecticut, Inc. v. Stiegler,* 4 Conn.App. 240, 243-45, 493 A.2d 293 (1985)                              Page 33

*In re T.D.M.A. Inc.*, 66 B.R. 992, 995 (Bankr. E.D. Pa. 1986) Page 29

Stewart Foods, Inc., 64 F.3d 141 (4th Cir. 1995)         Page 33

In re Triangle Lab., 663 F.2d 463 (3d Cir. 1981)         Page 31

*In re Watts,* 2013. Bankr. LEXIS 4822*12 (Bankr. N.D. Iowa 2013) Page 24

*In re Wedtech Corp.,* 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987) Page 19

17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d §§ 4241-55 (2d ed. 1988). Page 30

## II.   <u>Jurisdictional Statement</u>

1.      The court has jurisdiction over this matter pursuant to 28 U.S.C. §§157, 365, 1334, 6006, 9014 and 9024.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 29 U.S.C. § 157(b)(2).  The statutory predicates for the relief requested herein are § 365(a) of the Bankruptcy Code and the Federal Rule of Bankruptcy Procedure.

III.   **Statement of Issues Presented**

1.     Whether the Court acted unreasonably and misapplied the facts and law of the case in Denying Debtor's Motion for an Extension of Time to Accept or Reject Lease?[1]

2.     Given the very unusual personal circumstances involving the life and death health issues of the pro se Debtor arising during the

_____

[1] There have been subsequent rulings of the Bankruptcy Court (Denying Debtor's Motion to Assume Lease, NO. 19-21619 [151]; And Granting A&F Main Street Associates, LLC's Motion For Relief from Stay NO. 19-21619 [150]) which rely upon the same fact set and the underlying *ruling that the Lease of A&F has terminated*.

The debtor has filed a Motion to Reconsider the issue whether the lease of A&F has terminated and the Bankruptcy Court has received extensive briefing as to the issue [177] [205] [206] [222] [223] [224] [225] [228].  These Pending Motions before the Bankruptcy Court rely upon the same fact set as this appeal, have been extensively briefed and the matter is now been taken under advisement by the Bankruptcy Court as to whether the lease has in fact terminated.

Since an adverse ruling by the Bankruptcy Court as to whether the Lease of A&F has terminated on subsequent motions will also be appealed, the District Court may seek to demur on the present appeal pending a ruling by the Bankruptcy Court on other underlying motions as to the issue whether the lease of A&F has in fact terminated.

pendency of the Automatic Stay, did the court act unreasonably in refusing to grant the debtor an Extension of Time to Accept or Reject the Lease by and between Sakon and A&F Main Street Associates, LLC ("A&F")?

3.     Whether the Bankruptcy Court properly erred in denying a Motion for Extension of Time by ruling that the lease by and between Sakon and A&F Main Street Associates had in fact terminated?

4.     Did the court err in the determination that the lease of A&F had terminated pre-petition?

5.     Did the court err by failing to hold an evidentiary hearing as to whether the underlying facts were not contested?

6.     Was the court's reasoning that the lease had terminated pre-petition in error when the issue was presented to a Connecticut Court pre-petition and the Connecticut Court entered no such ruling?

## IV.   Statement of the Case

1.     A Chapter 11 Bankruptcy was filed by the movant on 12/19/2019.

2.     On 11/26/2019, the debtor John Sakon ("Sakon" or "debtor") had a routine out-patient arthroscopic knee surgery.[2]  Days afterward, Sakon experienced a severe life or death complication of the surgery arising from a Serratia Marcescens Surgical Site Infection ("SSI")[3]. Sakon was admitted to hospital on 12/18/2019, had emergency surgery, remained hospitalized until 12/20/ 2019 and continued on Nurse assisted IV Antibiotic homecare programmed from 12/18/2019 to the end of January 2020.[4]

---

[2] Said surgery was necessitated when the debtor was hit by a truck coming from the rear while riding his bicycle in a Memorial Day Bike Rally in the town of Glastonbury.  The driver of the truck was Michael K. Roberts who is the Deputy Director of Emergency Services and a sworn officer for the creditor town of Glastonbury.  Debtor has filed motion [237] with the Bankruptcy Court to retain the law firm of Billings Barrett and Bowman to bring a liability claim arising from the incident.

[3] In a population-based study of *Serratia* bacteremia, the 7-day and 6-month mortality rates were 5% and 37%, respectively.  Engel HJ, et al.  *European Journal Clinical Microbiology Infectious Diseases.* 2009 Jul.  28 (7): 821-4. Since the debtor was age 65, his risk of mortality increased.  As a direct result of his *Serratia* infection, the debtor had a compromised immune system; thereby making him an "at-risk" person requiring quarantine.

[4] Survival rates increase if the patient is removed from other hospital infection risks and quarantined in his home.

Sakon continued under close care by Infectious Disease Physicians thru March 2020 when his vitals and tests began to return to normal.

3.      On 12/13/ 2019, the creditor A&F Main Street Associates, LLC ("A&F") filed a Motion for Relief from Stay [55].  Said motion was ruled not to be in compliance with the rules and a Deficiency Notice was issued by the Court [56].  An Amended Motion for Relief from Stay was filed on 12/18/2019 [59]. Questions remain as to adequate service of process of [59][88].[5]

4.      On 12/26/2019, the debtor moved for a Temporary Stay of Proceedings [63] up to and including 01/31/2020 due to his life or death illness.  The court granted the stay to 01/15/2020 and ordered a Telephonic Status Conference on that date [64].  At said Telephonic conference on 1/15/2020, the court extended the Temporary Stay of Proceedings to 1/31/2020 [66].  By doing so, the Bankruptcy Court acknowledged the contentions of debtor's medical condition and his prescribed treatment plan. *See Ruling page 4.*

---

[5] Sakon has moved for sanctions [239] under Rule 9011 to strike A&F's motion [59] and pleading [88] for failure of service of process.

5.     On 01/21/2020, the debtor filed a Motion for Extension of Time to Accept or Reject Lease of A&F [85].  In said motion, the debtor requested additional needed time to determine his plan of reorganization.

6.     On 02/05/2020 a hearing was held on [85][88].  Debtor appeared at said hearing in a greatly diminished capacity.[6]  As the audio record of the hearing will reflect, the Debtor had difficulty even standing due to his impaired capacity and was confused during the proceedings.  Debtor declared at said hearing that he had not seen or received A&F's Objection to the Extension of Time to Accept or Reject the Lease [88].

7.     On 03/02/2020, the court in ruling [129] denied Debtor's Motion [85] for Extension of Time to Accept or Reject Lease making Motion [116] moot.

A.    In said ruling the court ruled the Lease had terminated pre-petition under Connecticut State Law.

B.    In said ruling, the court made findings of fact as to the termination of the lease without holding an evidentiary hearing.

---

[6] Blood tests taken on 02/04/2020 (reported 02/06/2020) showed, inter alia, highly abnormal results on critical vitals thereby affirming Debtor's diminished capacity at the 02/05/2020 hearing.  If required, these blood tests will be provided to this court.

C.   In said ruling, the court claimed "uncontested facts" without holding an evidentiary hearing or inquiring with the debtor whether he contested said facts.

D.   In said ruling, the court claimed sufficient legal authority, when the legal authority cited did not support the ruling.

V.   **Background**

1.   The Debtor's primary asset is an assemblage of 13.5459 Surveyed Acres of real property with Special Permit approvals to construct 94,640 Square Feet of retail and restaurant uses (entitled the "**The Shoppes at Avalon**" or "**property**") located in Glastonbury, Connecticut. The property comprises four independent parcels of land further described as follows:

A.   131 Griswold Street, Glastonbury, Connecticut a parcel of land with improvements thereon of 3.3904 acres identified on the Glastonbury Land Records at Volume 404 and Page 1080.

B.   #N2B Griswold Street, Glastonbury, Connecticut a parcel of vacant land of 1.8576 acres identified on the Glastonbury Land Records at Volume 102 and Page 237.

C.   #E8A Main Street, Glastonbury, Connecticut a parcel of land

with improvements thereon of 4.9493 acres identified on the Glastonbury Land Records at Volume 920 and Page 209.

D.   Area Subject to Lease of A&F Main Street Associates in Favor of John Alan Sakon known as #2980 Main Street, Glastonbury, Connecticut being a parcel of land of 2.5597 acres identified on the Glastonbury Land Records at Volume 1245 Page 177. Hereinafter the "**Lease**".

E.   Together with all rights and easements as shown in said survey.

2.   In the initial Bankruptcy Filing, the Debtor valued the primary asset showing a combined "AS-IS" value *of the assemblage* as $11,430,000. The value the debtor used in his filings was predicated upon an MAI appraisal of the primary asset prepared in the 07/18/2019 for the refinancing of the property.[7]   The corresponding debt is approximately $6,000,000.

3.   The debtor was forced into bankruptcy by attempts of the creditor town of Glastonbury to seize the primary asset.  While the public record will show the debtor applied for and was granted his entitlements no

---

[7] The appraisal has subsequently been filed with the court on 02/20/2020 Docket [115].

less than 7 times by the creditor town of Glastonbury Zoning Commission, his attempts to close on a loan commitment to refinance the debt was frustrated when Glastonbury administrative officials declared the debtor's entitlements had expired.[8]  While the debtor claims the town officials libeled and slandered the asset, the plan of reorganization is to confirm the entitlements for an 8th time to allow take-out refinancing of the asset to proceed and move for a dismissal from Chapter 11.

4.    The Amended Lease property is integral to the reorganization of the Chapter 11 estate.  The value of the property of $11,430,000 is the value in assemblage.  It is the debtor's contention that without the leasehold property there is no assemblage, any reorganization is

_____

[8] The public record will also show the debtor is a whistleblower of corruption by the administration of the town of Glastonbury.  After coming forth as a whistleblower, the town of Glastonbury Police falsely arrested the debtor 5 times on 11 felonies and 3 misdemeanors.  The debtor has prevailed at trial in all the charges except one of the felonies which remains pending (the debtor refused a plea of A/R from the State and requested a Jury Trial).  The creditor town of Glastonbury successfully got a judgment of foreclosure on the primary asset while the debtor was incarcerated before he could raise bond.  The debtor has listed the false arrests actions in the petition as 33. Schedule of Potential and Pending Claims Against Third Parties Items #2, #4, #5, #7, #11.  The Law Office of John Williams has agreed to pursue false arrest charges against the town on behalf of the debtor and a motion to approve the retention of Attorney Williams will be filed in the Bankruptcy Court shortly.

impossible and the divided properties will have less value than the current debt.

## VI.  **Summary of Argument**

1.      This appeal deals solely with the denial of Debtor's Motion for the Extension of Time to Accept or Reject the Lease of A&F [85].  However, a simple motion for extension of time to deal with a life or death medical issue of the debtor *mutated* into a question as to whether the Court was presented with sufficient legal authority and uncontested facts to determine whether there is, in fact, a lease to assume or reject.   By this mutation of a simple Motion for Extension of Time into multiple issues, the debtor was denied the appropriate due process of law and the court erred.

2.      **Error Surprise**.  The Notice of hearing on 02/05/2020 [91] was docketed to solely deal with the issue of the Extension of Time to Accept or Reject the Lease [85].  The debtor appeared in a dimished physical state (hence the need for an extension of time) and was not prepared to deal with the substantive issues of A&F's Motion for Relief from Stay [55][59]. However, it his Objection to the Extension of Time to Accept or Reject Lease [88], the attorney for A&F factually argued the merits of its Motion for Relief from Stay [55][59]. While the debtor was pro se, the debtor did

announce at the hearing that he was unaware of the 01/28/2020 filing of an

"Objection to the Motion for Extension of Time to Accept or Reject Lease"

filed by A&F [88] and asked opposing counsel for a copy. [9]   In fact, to

demonstrate the confusion of the debtor, who was seeking an extension of

time as he was clearly under a diminished capacity to begin with, the

docket entry filed by the Court after the hearing [93] clearly demonstrates

that the court was considering the matter as a Motion to Assume/Reject the

Lease and not as a Motion for Extension of Time.  From the Docket Sheet:

| |
|---|
| **93** |
| 02/05/2020 |
| Hearing Held. Matter under advisement (RE: [85] Motion to Assume/Reject filed by Debtor John Alan Sakon). |
| 02/05/2020 |
| Matter Under Advisement (RE: [85] Motion to Assume/Reject filed by Debtor John Alan Sakon). Matter Placed Under Advisement on 2/5/2020. (Text entry; no document attached.) |

It is clear that the court's intention was to deal with the Motion to

Assume/Reject at the 02/05/2020 hearing.  This worked surprise on the pro

se debtor as he was only prepared to argue the Motion for Extension of

Time due to his serious medical condition.  By taking up arguments as to

an issue that was not calendared and for which the debtor was not

prepared worked surprise on the debtor and so did the court err.

---

[9] Sakon has moved for sanctions [239] under Rule 9011 to strike A&F's motion [59] and pleading [88] for failure of service of process.

3. **Error Uncontested Facts.** A primary error of the court in its ruling was the finding that there were uncontested facts. This was a hearing on a Motion for Extension of Time. This was not a hearing on whether a lease could be assumed on the allegation that the lease had terminated pre-petition. Normal due process would require the movant (A&F) to present evidence to support factual allegations that the Lease had terminated by the weight of the evidence. The debtor was denied his due process rights by denying the debtor the right to contest the fact set and relevant allegations of the movant A&F. The court ruled that at the hearing it was presented with uncontested facts to determine the threshold question as to whether there was a lease. This dealt with the substantive issue of A&F's Motion for Relief from Stay [55][59] and not a simple Motion for Extension of Time [85]. The fact set was and is hotly contested by the Debtor as clearly argued in subsequent pleadings [Motion to Assume Lease of A&F [116]].

4. **Res Judicata.** A 98-year Ground Lease was entered into by the debtor and Mary Randazzo Trustee (Successor A&F Main Street Associates, LLC ("A&F")) on February 11, 1999. At the time of the Motion, the lease was in its 20th year. In its ruling, the Bankruptcy Court acknowledged "Whether a lease has terminated is a question of state law.

*See In re Kong,* 162 B.R. 86,91 (Bankr. E.D.N.Y. 1993)."  The Bankruptcy

Court when on to conclude that the Lease, and the Debtor's rights,

thereunder, terminated pursuant to Connecticut law upon service of a pre-

petition Notice to Quit.  However, a Connecticut Court did take up the

matter as to the pre-petition Notice to Quit in a Summary Judgment

Proceeding for Possession prior to the filing of Bankruptcy and the

Connecticut Court did not rule the lease had terminated under Connecticut

Law.  Therefore, the issue as to whether the lease had terminated pre-

petition was Res Judicata.  While the Bankruptcy Court acknowledged the

hegemony of State Law, the court ruled contrary to the decision of the

Connecticut Court and in doing so acted as a de facto court of appeal.  In

doing so the Bankruptcy Court erred.

## VII.   __Argument__

1.    On 11/26/2019, the debtor John Sakon ("Sakon" or "debtor")

had a routine out-patient arthroscopic knee surgery.   Days afterward,

Sakon experienced a severe life or death complication of the surgery

arising from a Serratia Marcescens Surgical Site Infection ("SSI")[10]. Sakon

---

[10] In a population-based study of *Serratia* bacteremia, the 7-day and 6-
month mortality rates were 5% and 37%, respectively.  Engel HJ, et al.
*European Journal Clinical Microbiology Infectious Diseases.* 2009 Jul.  28
(7): 821-4.  Since the debtor was age 65, his risk of mortality increased.  As
a direct result of his *Serratia* infection, the debtor had a compromised

was admitted to hospital on 12/18/2019, had emergency surgery, remained hospitalized until 12/20/ 2019 and continued on Nurse assisted IV Antibiotic homecare programmed from 12/18/2019 to the end of January 2020. Sakon continued under close care by Infectious Disease Physicians thru March 2020 when his vitals and tests began to return to normal.

a. The debtor sought an extension of time of the Determination Period for cause.  See *In re Channel Home Ctrs., Inc.,* 989 F.2d 682 (3d Cir. 1993), <u>cert. denied,</u> 114 S. Ct. 184 (1993).  In enacting section 365(d)(4) of the Bankruptcy Code, Congress recognized that in some cases additional time would be required for bankrupt lessees to decide whether to assume or reject leases.  In those circumstances, upon adequate demonstration of cause, bankruptcy courts may grant lessees extensions of time in which to assume or reject.  *In re American Healthcare Mgmt., Inc.,* 900 F.2d 827, 830 (5th Cir. 1990).

b. It is well-established that the factors in support of an extension of time under 365(d)(4) of the Bankruptcy Code include, among others, "whether the debtor has had sufficient time to formulate a plan of reorganization," *In re. Burger Boys, Inc.,* 94 F.3d 755, 761.  From the

---

immune system; thereby making him an "at-risk" person requiring quarantine.

fact set presented, it is clear the debtor John Sakon did not have sufficient time to formulate a plan.  The debtor faced a life or death medical condition and it would be unreasonable to think the debtor had sufficient time to focus on, much less, formulate his plan.

c. An extension of time was warranted where the leases are an important asset of the estate such that the decision would be central to any plan of reorganization. *In re Wedtech Corp.,* 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987); *accord Channel Home Ctrs.,* 989 F.2d at 689.  By the appraisal presented, it is clear the Lease is an important asset to the estate.

2.    A Ground Lease was entered into by the debtor and Mary Randazzo Trustee (Successor A&F Main Street Associates, LLC ("A&F")) on February 11, 1999.  This court had concluded that the Lease, and the Debtor's rights, thereunder, terminated pursuant to Connecticut law upon an alleged service of a pre-petition Notice to Quit.  Therefore, the court ruled, pursuant to the provisions of 11 U.S.C. § 362(b)(10), the Lease is not subject to the automatic stay as the lease terminated pre-petition.  Accordingly, the court denied debtor's Motion for Extension of Time to Accept or Reject the Lease.

a. In its ruling the Bankruptcy Court's cites *Presidential Village, LLC v.*

*Melissa PHILLIPS et al.* 325 Conn. 394, 397, 158 A.3d 772 (2017).

The application of this legal precedent is in clear error.  As the

Connecticut Supreme Court ruled:

> "The lease is neither voided nor rescinded until the landlord
> performs this act and, upon service of a notice to quit
> possession, a tenancy at will is converted to a tenancy at **779
> sufferance."" (Citations omitted.) Housing Authority v. Hird, 13
> Conn.App. 150, 155, 535 A.2d 377, cert. denied, 209 Conn.
> 825, 552 A.2d 433 (1988).**

However, in citing *Presidential,* the Bankruptcy court is citing a

precedent for a tenancy-at-will lease and seeking to apply it to a 98-

year Ground Leasehold in its 20th year.  A Tenancy-at-will is a

property tenure that can be terminated at any time by either

the tenant or the owner or landlord. It exists without a contract or

lease and usually does not specify the length of a tenant's duration or

the exchange of payment.  In other words, *Presidential*  involved a

lease which can be terminated at will by either party.  In *Presidential,*

the Landlord did terminate the lease by filing a Notice to Quit.   The

instant case is a 98-year written Ground Lease which cannot be

terminated at will by either party.  A tenancy-at-will, by its nature,

holds no equity in a leasehold estate.  While a 98-year Ground Lease

holds a significant amount of equity in the leasehold estate and such

equity becomes part of the Bankruptcy estate.  The fact set of

*Presidential Village, LLC* gives no credence to the court's decision in

the instant case and was used in error.

b. The courts reliance on: *Housing Authority v. Hird,* 13 Conn.App. 150,

155 (1988) is equally flawed.  The lease in *Housing Authority* was a

month to month lease which could be terminated by either party at

will.  Such precedents simply do not apply to a 98-year ground lease

that is in its 20 year of existence.  A 98-year Commercial Ground

Lease comprises a Leased Fee and a Leasehold estate.  The

leasehold estate, by its very 98-year nature, will have a substantial

equity interest.  Such an interest in equity becomes part of the

Bankruptcy Estate.  There is no equity interest in *Housing Authority.*

3.    In its oral argument, A&F cited the following case laws in

support of its position:

> In the present case, the lease was unequivocally terminated prepetition.  Once a lease has been terminated, the bankruptcy court cannot revive it, even by its equitable powers.  In re Nebille, 118 8.R. 14, 18 (Bankr. E.D.N.Y. 1990); accord In re Lakes Region Donuts, LLC, 2014 Bankr. LEXIS 1183, *13 (Bankr. D.N.H. 2014).  Unable to assume the terminated Lease, this Court has held cause exists for relief from stay.  In re Masterworks, Inc., 94 B.R. at 265; see also In re Watts, 2013. Bankr. LEXIS 4822*12 (Bankr. N.D. Iowa 2013)

The movant's assertion that the lease had unequivocally terminated prepetition has no evidence save for his own claims.  All the claims made by the A&F in his pleading at [59]  **B.     Relevant Factual Background**  , save for the first paragraph as to ownership, is disputed and the debtor leaves A&F to his proof.  An evidentiary hearing was required as to these allegations and should have been held.  Given the debtor's health and diminished mental state on 02/05/2020, the court acted unreasonably in refusing the extension of time to accept or reject the lease. The court's ruling that there was "uncontested facts" is simple error.  The court further erred by taking up the substantive issues of pleading [59] Motion for Relief from Stay which debtor had not yet had opportunity to brief.  This is procedural error.

4.     **However, an evidentiary hearing may not be necessary as the ruling of the Bankruptcy Court and the claim of A&F  lacks one critical element**.  In all the cases cited in the 2nd District and across the country, the courts have only concluded that a lease had unequivocally terminated when there was evidence of a writ or judgment of possession that issued pre-petition.[11]  In all but one case cited by the A&F in all its oral

---

[11] In 2005, Congress added an exception to the automatic stay provisions. The Congress decreed that any residential eviction proceedings in which the landlord

arguments, evidence that a lease had terminated pre-petition was found by a writ or judgment of possession issued by a State Court pre-petition.

   a. In making its decision, the Bankruptcy Court cited *In Re Neville*, 118 B.R. 14 (Bankr. E.D.N.Y. 1990).  However, in *Neville,* the court found that the District Court of Nassau County issued a final judgment of possession and warrant of eviction on October 30, 1989.  The debtor filed a petition for relief under Chapter 11 on May 21, 1990. Therefore, the Debtor's lease terminated pre-petition and the court denied a stay of proceedings.  *In Re Neville is cited by* (*In Re Issa Corp.*, 142 B.R. 75 (Bankr. S.D.N.Y. 1992), where the court denied a Motion to Assume an Executory Contract and denied a stay of proceedings as a warrant of eviction was issued by the Civil Court of New York pre-petition.) *In Re Neville is also cited by* (*In Re Gromyko, Inc.*, 142 B.R. 20 (Bankr. D.R.I. 1992) where the Court denied the

---

obtained a judgment of possession *prior* to the filing of the bankruptcy petition may be continued.  While the 2005 congressional act spoke to only residential properties, the principal is clear.  It would appear the Bankruptcy Courts of our nation have applied this principal voiced by the Congress for residential leases to non-residential leases. As the following  case law clearly demonstrates, a landlord must obtain a judgment of possession prior to the filing of the petition to seek relief from the automatic stay for a termination of the lease.

stay of proceedings as the parties stipulated that the lease had terminated pre-petition under Rhode Island Law.) *In Re Neville is also cited by* (*In Re Island Helicopters, Inc.*, 211 B.R. 453 (Bankr. E.D.N.Y. 1997) where the Bankruptcy court found that the state court ruled and issued an order that the debtor's interest in the Heliport had terminated pre-petition). *In Re Neville is also cited by* (*In Re Foote*, 277 B.R. 393 (Bankr. E.D. Ark. 2002) where the court denied a stay of proceedings as the Arkansas court entered a writ of possession pre-petition).

b. The Attorney for A&F went on to cite the unreported decision *In re Lakes Region Donuts, LLC,* 2014 Bankr. LEXIS 1183. *13 (Bankr. D.N.H. 2014). This case reaffirms those cited above. The New Hampshire Circuit Court issues a Writ of Possession on June 11, 2013 and the petition was filed on July 19, 2013. Therefore, the Bankruptcy Court ruled the lease was terminated by the State Court pre-petition and relief from a stay of proceedings was granted.

c. Lastly the final case cite by A&F (*In re Watts,* 2013. Bankr. LEXIS 4822*12 (Bankr. N.D. Iowa 2013)) is akin to the cases cited above. (supra, *In Re Neville*, *In Re Issa Corp.*, *In Re Gromyko, Inc.*, *In Re Island Helicopters, Inc.*, *In Re Foote, In Re Lakes Region Donuts,*

*LLC).*  The Cedar County Court entered a judgment of possession on October 25, 2012.   The Iowa Supreme Court affirmed the ruling on March 8, 2013.  On March 19, 2013, the Debtors filed their petition in bankruptcy.  The bankruptcy court granted a Motion for Relief from Stay as the lease had terminated pre-petition by a ruling of the State Court.

5.      The Bankruptcy court goes on to cite *In re Masterworks, Inc.* 94 B.R. 262,267 (Bankr. C. Conn. 1988).  While this is a Connecticut Case and an analog to the instant action, *Masterworks* but does not support the decision of the court that the lease had terminated pre-petition.  In *Masterworks,* the Connecticut Bankruptcy Court held a Connecticut Lease terminated pre-petition without a writ of possession issued by a Connecticut Court.  While Judge Shiff's decision is at odds with the cases cited above as a writ or judgment of possession had not issued pre-petition (supra, *In Re Neville*, *In Re Issa Corp.*, *In Re Gromyko, Inc.*, *In Re Island Helicopters, Inc.*, *In Re Foote, In Re. Lakes Region Donuts LLC.),* the ruling was not appealed.  However, Judge Shiff went on to note:

> "Although the lease was terminated, Rich may not evict Masterworks
> without obtaining a summary process judgment in state court, which
> may consider the equities of the case under an anti-forfeiture doctrine

adopted in Connecticut. *See Matter of Curio Shoppes, Inc.,* 55 B.R.

148, 152 (Bankr.D.Conn.1985)."

Judge Shiff found that Masterworks offered no explanation that would excuse the default.[12]   This is not true in the instant case.   While the underlying issue was a simple motion for extension of time, if the court was issuing a ruling on the Motion for Relief from Stay, it would have erred in granting such relief under the given fact set.

a. A&F *did* move for a summary process judgment in the Connecticut Court and the matter did come to trial on 8/14/2019.

b.  While A&F moved for a judgement of possession, the debtor not only counterclaimed the doctrine of anti-forfeiture, the debtor counterclaimed the rent had terminated for the term of the Lease pursuant to the terms of the Lease.[13]

c. The matter *did* go to trial and the parties choose to settle at trial rather than the landlord risks the loss of rent for the remaining 78-

---

[12] While not relevant here, the debtor finds Judge Shiff's ruling questionable as to jurisdiction.  See debtor arguments in [225] paragraph 4. Abstention and Jurisdiction.

[13] See [115 – Exhibit A] 2nd Amended Answer and Special Defenses in re: *A&F Main Street Associates, LLC vs. Sakon*, Superior Court of Connecticut, J.D. of Hartford Housing Session, dated June 18, 2019.

years under the terms of the lease or the tenant risk a termination of the lease.

d. The Connecticut Superior Court (Hon. Rupal Shah) did take up the matter and ordered the entry of a Stipulation between the parties.

e. It is clear from the "Stipulation" [176 Exhibit C], that the parties agreed to and the Connecticut State Court ordered,  that if bankruptcy was filed before 12/02/2019  then the Stipulation was not to be considered as a judgment of possession.  Therefore, the Lease did not terminate.

f. A Connecticut Court *did* take up the matter and ordered the Stipulation.   The Connecticut Court did not rule the Lease had terminated and did not grant a judgement of possession pre-petition.   This is the law of this case.   In ruling otherwise, the Bankruptcy court erred.

6.     In a subsequent ruling in the instant case, the Bankruptcy court affirmed its decision that the lease had terminated pre-petition by citing yet another precedent:  *In re Foote,* 277 B.R. 393, 396 (Bankr. E.D. Ark. 2002). Citing *In re Foote,* the Bankruptcy's court specifically ruled "Section 362(b)(10) provides, in relevant part, that the automatic stay does not apply to "a lease of nonresidential real property that has terminated by the

expiration of the stated term of the lease[.]"  11.U.S.C. § 362(b)(10).

"Because the debtor has no interest in a validly terminated lease, the automatic stay does not preclude a lessor from taking possession of property leased to a debtor under a terminated nonresidential real property lease."  This court's error is manifest in a clear reading of *Foote* as the Arkansas State Court had **issued** a writ of possession to Foote pre-petition.  In the instant case, the Connecticut State Court has not issued a writ of possession, much less even held a hearing on a writ of possession.  Therefore, *Foote is not on* point and a question remains if the lease had terminated pre-petition by a mere service of a Notice to Quit by the creditor absent any ruling by a Connecticut Court.  In fact the Stipulation of the parties states: "7. *Notwithstanding the language above, if the defendant files for bankruptcy in the Federal Court prior to December 2, 2019, then this agreement shall not be construed as a judgment of possession.*"

7.      The debtor questions the jurisdiction of this court to determine whether a lease had terminated under Connecticut State Law pre-petition when a Connecticut State Court had the opportunity to, but failed to rule as such.  This court appears to be acting in an appellate capacity to the Connecticut Court's ruling and has no authority to do so.  The Stipulation

was not a judgment of possession pre-petition.  Therefore, the Stipulation

was subject to events which were did occur post-petition.

a. Further, the Bankruptcy Court has no jurisdiction to rule a 98-year

Ground Lease had terminated without the clear ruling of a

Connecticut Court that the lease was terminated pre-petition.  As a

part of the settlement of the aforementioned litigation, o*n*

*08/14/2019, the debtor and A&F Main Street Associates LLC,*

*("A&F")* <u>*stipulated*</u> *that the Lease would not terminate pre-petition if*

*bankruptcy was filed.*  Therefore, A&F's claim that the lease has

terminated pre-petition is false. Said Stipulation was made an

order by the Connecticut State Superior Court.  The (II) claim of

A&F that the lease had terminated based upon its own terms is

also false as all events cited were pre-settlement.  An evidentiary

hearing would have clearly shown to this court that Sakon refused

to pay rent and filed a counterclaim pursuant Article 32 of the

Ground lease claiming there was a violation of the terms and

conditions of the Release Agreement and no rent was owed. See

[115 – Exhibit A page 6].

b. Case law cited above clearly shows that to determine whether a

lease has terminated pre-petition, the Bankruptcy Court must look

to a ruling that a writ or judgment of possession must have been granted by a State Court pre-petition.  Hence to guard against a misconception that the lease has terminated, if bankruptcy was filed, the parties stipulated there was no judgment of possession. See "Stipulation" [176 - Exhibit C] which  states:

   i. "*7. Notwithstanding the language above, if the defendant [Sakon] files for bankruptcy in the Federal Court prior to December 2, 2019, then this agreement shall not be construed as a judgment of possession.*"

c. In ruling the Lease was terminated, this court has violated the doctrine of Abstention and exceeded its jurisdiction.  Only a State of Connecticut Court could rule a Connecticut Lease had terminated under Connecticut Law pre-petition and the evidence of it having done so would have been found in a writ or judgment of possession pre-petition.   "Abstention" is a judicially created doctrine to resolve conflicts between Federal and state court and is based on comity with state courts. See 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and  Procedure: Jurisdiction 2d §§ 4241-55 (2d ed. 1988). However, abstention in the context of bankruptcy cases is

statutory, see 28 U.S.C. § 1334(c), and has been extended to administrative and Federal forums. See <u>Eastport Assocs. v. City of Los Angeles</u> (In re Eastport Assocs.), 935 F.2d 1071 (9th Cir. 1991) (district court did not abuse its discretion by abstaining to local administrative proceedings to resolve issues in adversary proceeding); <u>In re T.D.M.A. Inc</u>., 66 B.R. 992, 995 (Bankr. E.D. Pa. 1986) ("the statement that '[n]othing . . . prevents a district court in the interests of justice' from abstaining . . . probably applies to reference to federal as well as state forums").

d. A Connecticut Court did take up the matter and did not rule the Lease had terminated and did not grant a judgement of possession pre-petition.  This is the law of this case.  By ruling the lease had terminated, this court has effectively acted as an appellate body and exceeded its jurisdiction.  By doing so, this court violated the doctrine of Abstention.

8.    A&F's filings in this court are contrary to its position.  A&F has filed a creditor claim with this court of $97,500 arising out of the Stipulation. *In re Continental Airlines,* 981 F.2d 1450, 1459-60 (5th Cir. 1990) a contract continues to exist post-petition stating that "[a]n agreement cannot 'exist' for one purpose yet take on a 'nonexistent' quality which works to the

advantage of one party or the other."  By filing its claim, A&F confirms the Executory Contract (Stipulation) remains in effect and that the payment of $97,500 is a prepetition personal extension of credit to the debtor.  If the claim of $97,500 was not a personal extension of credit or if the lease had terminated as claimed, then  A&F has filed a fraudulent claim!

   a. *In re Modern Textile, Inc.,* 900 F.2d 1184, 1191 (8th Cir. 1990) executory contracts are "an existing and continuing legal obligation of the debtor" subject to rejection.  Therefore, if the debtor elects to reject the contract during the stay, no monies would be due.  By making its claim for a debt of $97,500, the creditor A&F acknowledges its claim as a pre-petition debt.  Therefore, only the lease and tax payments in 2020 are currently due to accept the Amended Lease into the bankruptcy estate and the $97,500 gets assigned to A&F's filed claim as a prepetition extension of credit.

   9.    This court may take Judicial Notice the debtor has already invested and paid to A&F over $350,000 in lease payments over the last 20 year of this 98-year term. Connecticut courts have traditionally employed equitable principles in lease termination matters. *F.B. Fountain Co. v. Stein,* 97 Conn. 619, 626-27, 118 A. 47 (1922) ("... [E}quity will relieve when the delay has been slight, the loss to the lessor small, and

when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease"). *See also Nicoli v. Frouge Corp.,* 171 Conn. 245, 247, 368 A.2d 74 (1976); *Galvin v. Simons,* 128 Conn. 616, 620, 25 A.2d 64 (1942); *R & R of Connecticut, Inc. v. Stiegler,* 4 Conn.App. 240, 243-45, 493 A.2d 293 (1985). It is clear to me that even in the absence of waiver, under the circumstances in this matter, no Connecticut court would enforce a forfeiture of the lease.   A Connecticut Court would be unlikely to terminate a 98-year lease, after 20 years and $350,000 payments of rent on a vacant piece of property, for a claimed 60 day default.   Remember the intervening sabotage occurred post Stipulation.

10.   It is widely held that a contract or lease no longer in existence is not executory and cannot be assumed.  See In re Stewart Foods, Inc., 64 F.3d 141 (4th Cir. 1995).  However, the termination process must be complete and not subject to reversal. See Moody v. Amoco Oil Co., 734 F.2d 1200 (7th Cir.), cert. denied, 469 U.S. 982 (1984); In re Triangle Lab., 663 F.2d 463 (3d Cir. 1981).   Since performance of the Stipulation was anticipated by its terms to be a post-petition event and provided for a means of reversal of the "claimed terminated lease" (sic) post-petition, the original Lease is assumable.  And this court erred.

a. The debtor in possession must seek a hearing even to assume or reject any Lease or Executory Contract. Only then can a non-debtor claim any default during the Stay of Proceedings. *See*; *In re Diamond Mfg. Co., Inc.*, 164 B.R. 189, 197-99 (Bankr. S.D. Ga. 1994).

b. Since any claim by A&F of a post-petition Default by Sakon could only arise *after* the debtor in possession has moved to assume the lease or Executory Contract.  The court erred in taking up the issue in a simple Motion for Extension of Time.  Andy claim of default was an issue to be taken up in a hearing on a Motion to Assume or Reject the Lease.

## VIII.   <u>Conclusion</u>

The error of the Bankruptcy Court is a procedural one.  By confusing a simple Motion for Extension of Time arising out of a unique life or death illness with a Motion to Accept or Reject a Lease did the court err.  The court had good cause to grant the Motion for Extension of Time to Accept or Reject a Lease and had already granted a General Stay of Proceedings for the same good cause.

The second error of the court was to allow A&F to argue the merits of its Motion for Relief from Stay in the Motion for Extension of Time hearing.

At no time did A&F argue the Debtor was not deserving of an Extension due to his illness.  Rather, the court allowed the creditor A&F to take advantage of the situation in mutating the hearing to one as to whether the lease had terminated.

The court's error is manifest in the statement that it had "uncontested facts".  Aside from the fact that the burden of proof was on A&F to prove its allegations, the hearing on the Motion for Extension of Time was not an evidentiary hearing.  No oaths were taken and no witnesses were called.

None of the legal cites relied upon the Bankruptcy Court do not support its decision.  The overwhelming case law cited in this brief does not support the decision of the Bankruptcy Court.   It is the current law of the land that to find a lease has terminated, a bankruptcy court must look for a Judgment of Possession in the State Courts which occurred pre-petition.  No such ruling exists in the instant case.

The matter as to whether the lease had terminated was not properly brought in a Motion for Extension of Time.  Still, the existence of the lease post-petition is Res Judicata.  A Connecticut Court did take up the matter and was not obligated to issue a Judgement of Possession.  The Bankruptcy Court cannot substitute its own judgement in the matter.

The Bankruptcy Court of Hartford has committed clear error.  The Motion for Extension of Time should be granted.  The record will show that the debtor filed a Motion to Accept the Lease of A&F on 02/24/2020 [116] and to accept the Executory Contract (Stipulation) on [205].  These motions are the proper forum as to whether the Lease had terminated or whether the Stipulation is an Executory Contract that can be assumed into the Bankruptcy Estate.

**VIII.**   <u>**Certificate of Compliance**</u>

The appellant certifies this brief meets the requirements of Rule 8015.

**IX.**   <u>**Notice and Certification**</u>

Notice of this Motion has been provided to all persons required to receive notice according to the Federal Rules of Practice.

I hereby certify that on the above caption date, a copy of the foregoing was filed with the court and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.  The foregoing was also served on the aforementioned date, by email to the parties as indicated below.

Goldstein, Eric (EGoldstein@goodwin.com); Thomas Moriarty (tom@mpslawfirm.com); Donald E. Frechette Esq.

(donald.frechette@lockelord.com); steven.e.mackey@usdoj.gov; Welsh, Jaime A. (JWelsh@goodwin.com); Heidel, Kristen L (KHeidel@goodwin.com); 'Stephen Sakonchick' sakon@flash.net;

By:

John Alan Sakon, Pro Se
82 Folly Brook Lane
Manchester, CT 06040
Tel: (860) 793-1000
Fax: (860) 675-4600
Email: johnsakon@sakon.biz

**Appendix**