## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: JOHN ALAN SAKON,<br>*Appellant-Debtor*,<br><br>v.<br><br>A&F MAIN STREET ASSOCIATES, LLC *et al.*,<br>*Appellees-Creditors*. | No. 3:20-cv-00353 (JAM)<br>No. 3:20-cv-00808 (JAM) |

### ORDER AFFIRMING DECISIONS OF BANKRUPTCY COURT

Appellant-debtor John Alan Sakon has filed two separate appeals *pro se* from several orders entered by the United States Bankruptcy Court (James J. Tancredi, *J.*), which principally denied Sakon's attempts to assume a commercial ground lease into his bankruptcy proceedings. The Bankruptcy Court declined to do so on grounds that the lease had terminated before Sakon filed his bankruptcy petition, and the Bankruptcy Court then converted his case from a Chapter 11 reorganization to a Chapter 7 liquidation bankruptcy.

Appellee-creditor A&F Main Street Associates, LLC ("A&F"), the owner of the leased property, opposes the appeals on the grounds that the Bankruptcy Court did not err in finding that Sakon's lease had terminated and that the court did not otherwise abuse its discretion in denying Sakon's motions. Appellee-creditor Town of Glastonbury (the "Town") opposes the appeal on the grounds that the Bankruptcy Court did not err in granting its motion to convert his case to a Chapter 7 bankruptcy and was not required to conduct a full evidentiary hearing before doing so. I will affirm the Bankruptcy Court's orders.

BACKGROUND

Sakon is a real estate developer. He owns or has leased four properties that are at issue in this action, which together comprise nearly all of Sakon's financial assets. *See* Doc. #1-1 at 8-9.[1] It is undisputed that Sakon owns three properties in the Town of Glastonbury: 131 Griswold Street, worth $1,200,000 according to the Town's appraisal; 2B Griswold Street, worth $350,000 according to the Town's appraisal; and 8E Main Street, worth $900,000 according to the Town's appraisal. Doc. #22 at 15.

The Town instituted foreclosure actions on these three properties in 2012 and 2016 because Sakon has not paid real estate taxes on them since 2009. Doc. #1-1 at 7-8. The Town alleges that Sakon now owes more than $900,000 in outstanding taxes on the properties, and interest continues to accrue at 1.5% per month. Doc. #25 at 23. The Bankruptcy Court noted "[a]fter multi-year litigation in each of the respective foreclosure actions—a function of, in large part, the Debtor's *modus operandi* of filing motions to continue, motions to extend time, motions for stay of proceedings, and motions to reconsider and appeals after adverse rulings—the Superior Court entered judgements of foreclosure by sale and ultimately set the sale date of all Properties to September 21, 2019." Doc. #1-1 at 8. Just two days before the sales were to take place, Sakon filed for Chapter 11 bankruptcy. *Ibid*.

In addition to the three properties, Sakon claims to own a long-term leasehold interest in 2980 Main Street in the Town of Glastonbury. This property is adjacent to the three properties

---

[1] Sakon has filed two appeals from the Bankruptcy Court, both captioned *In re: Sakon*, with docket Nos. 3:20-cv-00353 (JAM) and 3:20-cv-00808 (JAM). Because of the considerable legal and factual overlap between the two appeals, I am addressing both of Sakon's appeals in this consolidated ruling. For simplicity, citations to docket filings throughout this order refer only to those on docket No. 3:20-cv-00808 (JAM) except where otherwise noted.

Sakon owns, and Sakon has represented that he intends to pursue a development plan for the four properties together, for a project known as the "Shoppes at Avalon." Doc. #22 at 13. [2]

By way of background, Sakon entered into a 98-year ground lease with A&F's predecessor-in-title for the property on February 11, 1999. Doc. #24-1 at 18-59. The prior owner's interest in the property was assigned to A&F on December 6, 2011. *Id.* at 61-65.

Section 19.01 of the lease provided that nonpayment of rent constituted a default, upon which the landlord would provide the tenant with a notice of default allowing for fifteen days to cure. *Id.* at 36. If the tenant failed to cure, the lease provided for the landlord to serve the tenant with a notice of termination allowing for at least ten days before termination. *Id.* at 37. Sections 19.02 and 19.04 further provided that upon termination of the lease, the landlord could pursue any right or remedy at law available to it, including repossession by summary process proceedings or ejectment. *Ibid.*

On October 31, 2018, A&F sent Sakon a notice of default under the lease for failure to timely pay rent, with fifteen days to cure. *Id.* at 67-70. On November 19, 2018, A&F sent Sakon a notice of termination of lease in two weeks for failure to cure. *Id.* at 72-74. On December 19, 2018, A&F served Sakon with a notice to quit possession within one week. *Id.* at 78-81. On December 28, 2018, A&F commenced a summary process action in the Connecticut Superior Court to evict Sakon, alleging that he failed to vacate the premises within the specified time frame. *Id.* at 83-92.

---

[2] According to Sakon, he received an appraisal from KGAK Financial Group ("KGAK") in July 2019 that the four properties together are worth $11,430,000 "as-is." Doc. #22 at 14-16; Doc. #22-1 at 21. KGAK had offered Sakon a $4.8 million loan related to the "Shoppes at Avalon" development project, but the offer expired on April 23, 2019 and was conditioned on KGAK receiving a first-priority lien on the property. Doc. #22-1 at 7-15. A November 2019 email appears to suggest that KGAK would fund Sakon's project on the condition that he has "a legal entity, a legal project with all permits in good standing." *Id.* at 5. Sakon also references a letter dated April 8, 2020 from a creditor, HOC Holdings, that it was "in discussions with the debtor for the placement of a Debtor in Possession Loan" of $150,000 and was "ready, willing and able to fund the DIP Loan with the approval of the court of suitable terms." *Id.* at 119; Doc. #22 at 21.

3

On August 14, 2019, the Superior Court entered a stipulated order providing for an amended lease on the condition that Sakon pay $97,500 to A&F by November 30, 2019, in which case "the ground lease shall be reinstated as of the date of payment in full." *Id.* at 104 (¶ 3). Under the stipulation, the amended ground lease "shall not be operative or effective and shall be held in escrow by [A&F's] attorney and shall not be released until payment of the $97,500 is tendered." *Ibid*. If Sakon did not timely render payment, the amended lease "shall be null and void," and A&F could move for judgment of possession on or after December 2, 2019. *Ibid* (¶¶ 3, 6).

Sakon also agreed to waive all counterclaims and special defenses, and A&F agreed to timely cooperate in any refinancing of the property, "subject to and in compliance with this agreement." *Ibid*. (¶¶ 4-5). The final paragraph of the stipulation provided that "[n]otwithstanding the language above," if Sakon "files for bankrupcy [*sic*] in the Federal Court prior to December 2, 2019, then this agreement shall not be construed as a judgment of possession." *Ibid*. (¶ 7). Sakon concedes that he did not timely render payment pursuant to the stipulation. *See* Doc. #1-2 at 9.

Following Sakon's filing for Chapter 11 bankruptcy, A&F moved for relief from stay in December 2019 because Sakon had failed to pay A&F pursuant to the stipulation and because the lease had terminated before Sakon's bankruptcy petition. Doc. #6 at 30. Shortly thereafter, Sakon moved for a temporary stay of proceedings due to his health issues, which the Bankruptcy Court granted and subsequently extended through January 31, 2020. *Id*. at 30-31. The Bankruptcy Court also granted Sakon a motion for extension of time to respond to A&F's motion for relief from stay through February 21. *Id*. at 34. Sakon filed an opposition to A&F's motion, and the court held a hearing on this and other motions on March 10. *Id*. at 35, 37.

4

Sakon also filed a motion for extension of time to assume or reject the lease for the property, and the Bankruptcy Court held a hearing on his motion on February 5. *Id*. at 33.

Ultimately, the Bankruptcy Court held—in several separate orders on these motions and on Sakon's motions for reconsideration—that Sakon's lease to 2980 Main Street terminated in December 2018, when he received a notice to quit from A&F after failing to pay rent, and the Bankruptcy Court held that the stipulation did not reinstate the lease. Doc. #1-2 at 2-6. Accordingly, it granted A&F's motion for relief from stay and denied Sakon's motions on the ground that the Bankruptcy Court could not assume a nonresidential lease that has already been terminated under applicable non-bankruptcy law. *See ibid*.; Doc. #6 at 33-38.

Sakon's first appeal before this Court is from the Bankruptcy Court's order denying his motion for an extension of time to assume or reject the lease. *See* No. 3:20-cv-00353 (JAM) Doc. #1. A&F opposes that appeal, Doc. #22, and Sakon filed a reply. Doc. #28. Sakon's second appeal before this Court also challenges the Bankruptcy Court's denial of his motions for reconsideration of that ruling, its granting of A&F's motion for relief from stay based on the same reasoning, and its denial of Sakon's substantially similar motion to assume an executory contract for the ground lease. *See* No. 3:20-cv-00808 (JAM) Doc. #1-2.

In addition, the Town moved to convert to Chapter 7 bankruptcy proceedings, which would force liquidation of Sakon's properties rather than allow reorganization under Chapter 11. Doc. #6 at 33, 41.[3] Sakon opposed the motion and also filed motions for an evidentiary hearing and an application for subpoenas, which relate to Sakon's allegations that the Town has engaged in misconduct, corruption, and retaliation against Sakon and deliberately impaired his ability to

---

[3] The U.S. Trustee has not filed briefing in Sakon's appeals, but supported the Town's motion to convert to Chapter 7 in the Bankruptcy Court, noting there were "several grounds warranting conversion or dismissal" of Sakon's case. Doc. #1-1 at 3.

obtain financing that would enable him to avoid Chapter 7 bankruptcy.[4] Doc. #1-1 at 3; Doc. #28 at 4-10. Sakon accuses the Town in part of sabotaging his development project and financing through many false arrests, a town officer running him over with a truck, and libel and slander. Doc. #28 at 4-10.

Following hearings on April 9 and April 28, the Bankruptcy Court granted the Town's motion to convert and denied Sakon's various motions on May 28. Doc. #1-1. The Bankruptcy Court held conversion was appropriate under 11 U.S.C. § 1112(b)(4)(A) because, without the leased property as part of his estate, there was a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. *Id*. at 10-14. In particular, it noted on the basis of Sakon's financial statements that Sakon's only source of income was about $1,000 a month through Social Security and other government assistance while his expenses were about $3,530 a month. *Id*. at 9. It further noted that his assets declined by more than $8,000 over the course of his bankruptcy to just about $10,000 total, and that his liabilities including tax and mortgage debt and interest continued to accrue. *Id*. at 10. As of the May 28 order, the properties were loaded with more than $5.9 million in debt. *Ibid*. All these facts led the Bankruptcy Court to conclude that Sakon "has simply failed to demonstrate that he has any tangible capitalization, enforceable financing, or cash flow that can support his current obligations or plan objectives." *Id*. at 12.

Sakon's second appeal also challenges this ruling by the Bankruptcy Court. Docs. #1; #1-1. A&F and the Town oppose Sakon's second appeal, Docs. #24-25, and Sakon has filed replies.

---

[4] After several requests for extensions of time to respond to the Town's motion to convert, Sakon ultimately did not file a written opposition. However, at an April 9, 2020 hearing Sakon articulated his opposition and stated that, except for citing legal authorities, he had made his arguments in full. *See* Doc. #1-1 at 3.

Docs. #28-29. I heard oral argument on Sakon's first appeal on July 27, 2020, and then on his second appeal on October 14, 2020, and this consolidated ruling now follows.

DISCUSSION

A district court has appellate jurisdiction over a final judgment or order of a bankruptcy court. *See* 28 U.S.C. § 158(a)(1). The standards governing the Court's exercise of that jurisdiction are well-established. The Court reviews the Bankruptcy Court's findings of fact for clear error and legal conclusions *de novo*. *See Maverick Long Enhanced Fund, Ltd. v. Lehman Bros. Holdings Inc.*, 594 B.R. 564, 567 (S.D.N.Y. 2018). It reviews matters within the Bankruptcy Court's discretion—including denying a motion for extension of time, granting a motion to convert to Chapter 7, and denying a motion for reconsideration—for abuse of discretion. *See In re Bankr. Case No. 1-17-41310*, 2019 WL 3412110, at *1 (E.D.N.Y. 2019) (denial of request for extension of time reviewed under the "deferential abuse-of-discretion standard") (internal citations omitted); *In re Lynch*, 795 F. App'x 57, 59 (2d Cir. 2020) ("[a]n order converting a bankruptcy case for cause is reviewed for abuse of discretion"); *Davidson v. AMR Corp.*, 566 B.R. 657, 665 (S.D.N.Y. 2017) ("[t]he standard of review for the denial of a motion to reconsider is abuse of discretion"). A bankruptcy court abuses its discretion when its decision rests "on an erroneous view of the law or clearly erroneous factual findings," or if it "commits a clear error of judgment … based on all the appropriate factors." *In re Lynch*, 795 F. App'x at 59 (internal quotations and citation omitted).

The Court limits its review to the record before the Bankruptcy Court. *See In re Ampal-Am. Israel Corp.*, 554 B.R. 604, 617-18 (S.D.N.Y. 2016), *aff'd*, 691 F. App'x 12 (2d Cir. 2017). Furthermore, the Court need not consider an argument raised for the first time on appeal. *See*

*Route 21 Assocs. of Belleville, Inc. v. MHC, Inc.*, 486 B.R. 75, 83 (S.D.N.Y. 2012), *aff'd sub nom. In re Lyondell Chem. Co.*, 542 F. App'x 41 (2d Cir. 2013).

The Court accords a liberal construction to a *pro se* appellant's appeal. *See Elliott v. City of Hartford*, 823 F.3d 170, 172-73 (2d Cir. 2016) (*per curiam*). But the Court will not decide issues raised by a *pro se* appellant in conclusory fashion or in passing. *See Neita v. Precision Pipeline Sols.*, 768 F. App'x 12, 13 (2d Cir. 2019).

### Termination of the lease

The Bankruptcy Code provides that a bankruptcy "trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). It further provides, however, that the trustee "may not assume … [an] unexpired lease of the debtor" if "such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." 11 U.S.C. § 365(c)(3). "In other words, if a nonresidential lease has been terminated under state law, then the Trustee may not assume or assign the lease; rather, he can only reject it." *Super Nova 330 LLC v. Gazes*, 693 F.3d 138, 143 (2d Cir. 2012).

Sakon's primary argument in both of his appeals is that the Bankruptcy Court erred by finding that the lease had terminated pre-petition such that it could not be assumed under 11 U.S.C. § 365. He alleges that the Connecticut case law it relied on concerned only tenancies at will and therefore was inapposite, and that "in all the cases cited in the 2nd District and across the country, the courts have only concluded that a lease had unequivocally terminated when there was evidence of a writ or judgment of possession that issued pre-petition." Doc. #22 at 30-32; *see also* No. 3:20-cv-00353 (JAM) Doc. #21 at 19-21. Moreover, he argues that the lease had not terminated since "no rent was due" because A&F had violated the terms of the lease. *Id*. at 27. He adds that "[t]he effect of the Stipulation was that the parties agreed the leasehold interest

8

would not terminate pre-petition if bankruptcy was filed on or before December 2, 2019[,]" and "it was the clear intent of the parties that the leasehold would become part of the bankruptcy estate if a petition was filed." Doc. #29 at 8; *see also* No. 3:20-cv-00353 (JAM) Doc. #21 at 29.

In Sakon's view, the stipulation wiped the "slate clean as though the eviction predicated on a prior notice to quit possession had never commenced." Doc. #29 at 7. Furthermore, Sakon argues the "Stipulation is the form of an Executory Contract. If payment is made under the contract, there is an unequivocal continuation of the lease. As an Executory Contract, it can be assumed into the bankruptcy estate." *Ibid*.

Sakon misreads the applicable precedent as well as the lease and stipulation terms. Under Connecticut law, "[i]t is well settled that breach of a covenant to pay rent does not automatically result in the termination of a lease" but instead "gives the lessor a right to terminate the lease," which requires the lessor to "perform some unequivocal act which clearly demonstrates his intent to terminate the lease." *Getty Properties Corp. v. ATKR, LLC*, 315 Conn. 387, 407 (2015) (internal citations omitted). "Service of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease," because service of such notice is a statutory prerequisite to initiation of a summary process action. *Presidential Vill., LLC v. Phillips*, 325 Conn. 394, 402 (2017) (citations omitted); *see* Conn. Gen. Stat. 47a-23. Therefore, "[s]ervice of a valid notice to quit . . . terminates the lease and creates a tenancy at sufferance." *Getty Properties*, 315 Conn. at 407 (citations omitted); *see also In re Masterworks, Inc.*, 94 B.R. 262, 267 (Bankr. D. Conn. 1988) ("Upon service of [a notice to quit], the tenant's rights under the lease are extinguished … It is therefore well settled under Connecticut law that a notice to quit terminates a lease and reduces the lessee to a mere tenant at suffer[a]nce subject to eviction by summary process if the premises are not vacated") (citations omitted).

Contrary to Sakon's assertions, this Connecticut precedent is not limited to tenancies at will but also applies to leased tenancies. Although the Connecticut Appellate Court had held that "upon service of a notice to quit possession, a tenancy at will is converted to a tenancy at sufferance," *Hous. Auth. of Town of E. Hartford v. Hird*, 13 Conn. App. 150, 155 (1988), it has subsequently applied this rule to leaseholds as well. *See Vidiaki, LLC v. Just Breakfast & Things!!!*, 133 Conn. App. 1, 22-24 (2012).

Moreover, the stipulation that Sakon and A&F entered into expressly provided that the lease would not be "operative or effective" unless Sakon paid $97,500 to A&F by November 30, 2019, and that only once timely payment was made in full would the lease be "reinstated" as amended. Doc. #24-1 at 104 (¶ 3). These terms plainly illustrate that the parties understood that the lease had been terminated. *See Getty Properties*, 315 Conn. at 407 ("[w]hether there has been a termination . . . of a lease is to be determined by the intention of the parties.") (cleaned up). Despite Sakon's argument that his obligation to pay rent was discharged by A&F's misconduct, the stipulation that he signed states that the lease had terminated and would only be "reinstated" if Sakon paid A&F per the stipulation's terms. Sakon does not dispute that he failed to timely pay A&F the agreed-upon amount, and it is clear from the stipulation that such payment was a condition precedent to reinstatement of the lease.

For the same reasons, Sakon's argument that the lease is an executory contract also fails, because Sakon concedes that no payment was made by the deadline of November 30, 2019 that was specified under the terms of the stipulation.[5] Any potential financing, such as a potential

---

[5] The Bankruptcy Court also held that Sakon's argument that the stipulation was an executory contract was essentially the same as his other arguments in favor of assuming the lease and applied the doctrine of judicial estoppel. Doc. #1-2 at 8-9. In addition, it held that the motion was untimely because it was filed outside of the 120-day period required by 11 U.S.C. § 365(d)(4). *Id.* at 9. Each of these would provide a reasonable independent basis for denying Sakon's motion to assume executory contract.

debtor in possession loan from HOC Holdings, could not undo the reality that Sakon had already lost his interest in the property through the notice to quit and his failure to timely pay A&F under the terms of the stipulation.

In his first appeal, Sakon also advances several additional arguments to challenge the Bankruptcy Court's denial of his motion for extension of time to assume or reject the lease. Sakon does not repeat these arguments in his second appeal, but he expressly incorporates his briefing in his first appeal into his arguments in the second appeal. Doc. #22 at 20, 22.

First, Sakon argues that the court lacked jurisdiction because in order "to find a lease has terminated, a bankruptcy court must look for a Judgment of Possession in the State Courts which occurred pre-petition," No. 3:20-cv-00353 (JAM) Doc. #21 at 35, that the Bankruptcy Court's failure to do so violated the doctrine of abstention and exceeded its jurisdiction, *id.* at 30, and that "the parties stipulated there was no judgment of possession" if he filed for bankruptcy before December 2, 2019, which he did, *ibid.*

A party may challenge a bankruptcy court's exercise of subject matter jurisdiction at any time. *See In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 96 (2d Cir. 2006). "Bankruptcy judges may hear and determine . . . all core proceedings arising under title 11 . . . and may enter appropriate orders and judgments . . . ." 28 U.S.C. § 157(b)(1). None of the cases that Sakon cites holds that a bankruptcy court cannot rule on the issue of a lease's validity without a prior state court judgment of possession. No. 3:20-cv-00353 (JAM) Doc. #21 at 22-25, 28, 30-31 (citing cases). To the contrary, "a determination of the validity of a lease termination for purposes of assumption under 11 U.S.C. § 365(a) is a core proceeding notwithstanding that the crucial issue is whether there has been a breach of contract and proper termination . . . because the determination, although utilizing state law, is integral to the determination of a federal

question—may the lease be assumed under 11 U.S.C. § 365(a)." *In re Atlas Fire Apparatus, Inc.*, 56 B.R. 927, 933 (Bankr. E.D.N.C. 1986) (citations omitted). Accordingly, the Bankruptcy Court properly exercised its jurisdiction in deciding whether the lease had terminated pre-petition.

Second, Sakon makes a confusing argument that, because the state court did not rule that the lease had terminated pre-petition in the summary process proceedings before it, the Bankruptcy Court's determination of the issue was barred by *res judicata*. No. 3:20-cv-00353 (JAM) Doc. #21 at 16-17, 30, 35. But the issue of whether the lease had terminated pre-petition was not litigated during the summary process action in state court, *see A&F Main Street Associates, LLC v. Sakon*, No. HFH-CV-19-6011720-S (Conn. Super. Ct.), and the action was settled by way of a stipulated judgment that did not expressly address the issue. Because there is no predicate ruling in favor of Sakon on the lease termination issue, there is no occasion here to apply principles of *res judicata.*

Third, Sakon argues that the anti-forfeiture doctrine should have prevented the Bankruptcy Court from finding the lease had terminated, because notwithstanding any default he had paid over $350,000 to A&F over the course of the lease agreement. No. 3:20-cv-00353 (JAM) Doc. #21 at 25-26, 32-33. But Sakon first invoked the anti-forfeiture doctrine in his motion for reconsideration of the order denying his motion for extension of time to accept or reject the lease. Doc. #22-1 at 214. Therefore, I need not consider that untimely argument. *See In re Coudert Bros. LLP*, 809 F.3d 94, 100 (2d Cir. 2015) ("this Court … generally will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration.") (cleaned up).

Regardless, under Connecticut's anti-forfeiture doctrine, "[a] court may enjoin a forfeiture of a lease based on technical grounds" as opposed to the tenant's "wilful neglect," and

"where the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the conditions of the lease." *Nicoli v. Frouge Corp.*, 171 Conn. 245, 247 (1976) (internal quotations and citations omitted). The fact that Sakon at one point made his rental payments on time is not enough to excuse nonpayment in October and November 2018 and his failure to tender payment pursuant to his stipulation with A&F. Accordingly, the Bankruptcy Court did not err by failing to find that the anti-forfeiture doctrine protected the lease from termination.

Fourth, Sakon argues that the Bankruptcy Court denied him his right to constitutional due process by determining that his lease had terminated before he filed for bankruptcy. The Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 158 (2d Cir. 2016) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). The question is "whether the state acted reasonably in selecting means likely to inform persons affected," not whether those persons "actually received notice." *Ibid.* (internal quotations and citation omitted).

Sakon's allegations do not substantiate a due process violation. Sakon argues the Bankruptcy Court erred because it "mutated" a "simple motion for extension of time" into the "substantive issues" raised in A&F's motion for relief from stay, which "worked surprise" on him because the February 5 hearing was scheduled for argument only on the motion for extension of time. No. 3:20-cv-00353 (JAM) Doc. #21 at 14-15. But it was fair game for the

Bankruptcy Court to take up the issue of whether the lease had terminated in addressing the motion for extension of time to accept or reject the lease because that issue controlled whether Sakon would be able to accept the lease in the first place. The Bankruptcy Court gave Sakon adequate time to object to A&F's motion for relief from stay while notifying him that any such objection would be considered in relation to the motion for extension of time to accept or reject the lease. Sakon ultimately did file a lengthy objection to the motion for relief from stay, which the Bankruptcy Court considered in its ruling.

Sakon also alleges that he did not receive A&F's opposition papers before the hearing and that "[q]uestions remain" whether A&F timely served him the amended motion for relief from stay. *Id*. at 9. But Sakon has waived that argument on appeal because he failed to allege any inadequate service of A&F's papers at the February 5 hearing, in his opposition to the motion for relief from stay, or in any other filings. Moreover, on February 6, 2020, Sakon filed a motion for extension of time to respond to the "Amended Motion for Relief from Stay," which the Bankruptcy Court granted and which indicates that he had access to the amended motion at least as of that date and that he was afforded an opportunity to respond. Doc. #6 at 34.

Additionally, Sakon argues that the Bankruptcy Court should have held an evidentiary hearing on the disputed fact issues underlying the question of whether the lease had terminated, No. 3:20-cv-00353 (JAM) Doc. #21 at 16, referring in conclusory fashion to the entire background section of A&F's amended motion for relief from stay as disputed, apart from A&F's ownership of the property and the existence of the lease, *id*. at 22. Sakon first raised this argument in his motion for reconsideration. No. 3:20-cv-00353 (JAM) Doc. #22-1 at 209-10. Therefore, he has waived or forfeited that argument. *See E.E.O.C. v. Local 28 of Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333, 335 (2d Cir. 2001) (*per curiam*) (finding that the failure to

14

"contend that additional hearings were needed on [an] issue until after that court had rendered its decision" waived the argument on appeal).

Moreover, although Sakon asserts there were contested facts that warranted an evidentiary hearing, he did not dispute any of the facts that were material to the issue of whether the lease had terminated pre-petition, including the validity of the lease and stipulation, his failure to pay rent, service of the notice of default and notice to quit, and his failure to timely pay the sum required to reinstate the lease. Copies of the notice of default, notice to quit possession, the lease, and the stipulation were in the record. That record was sufficient for the Bankruptcy Court to find that the lease had terminated pre-petition. *See In re AMR Corp.*, 490 B.R. 470, 479 (S.D.N.Y. 2013) ("[i]t is unnecessary to conduct an evidentiary hearing on a contested matter unless there are disputed issues of material fact that a Bankruptcy Court cannot decide based on the record."). Accordingly, the Bankruptcy Court did not deprive Sakon of due process when it determined that the lease terminated pre-petition.

Finally, Sakon argues that the Bankruptcy Court acted "unreasonably" when it failed to grant the motion for extension of time despite his diminished capacity at the February 5 hearing and the fact that his "life or death medical condition" demonstrated that he had insufficient time to formulate his plan of reorganization. No. 3:20-cv-00353 (JAM) Doc. #21 at 18-19. The Bankruptcy Court granted a temporary stay of proceedings through January 31, 2020 because of Sakon's health issues. The Bankruptcy Court subsequently granted Sakon's motion for an extension of time to respond to the amended motion for relief from stay through February 21, 2020, also because of his health issues. Sakon has not pointed to any instance where he raised his health issues as a reason to grant the motion for extension of time to accept or reject the lease,

nor has he shown that he asked for any additional extension of time to respond to the motion for relief from stay because of poor health or otherwise. Therefore, he waived any such argument.

Moreover, even if the argument were not waived, the terminated lease could not have factored into Sakon's plan of reorganization by way of assumption or assignment for the reasons explained above. Accordingly, the Bankruptcy Court did not err in denying the motion for extension of time to accept or reject the lease notwithstanding Sakon's health issues.

In sum, there is no merit to any of Sakon's challenges to the Bankruptcy Court's determination that his lease was terminated before he petitioned for bankruptcy. To the contrary, the Bankruptcy Court correctly determined that it could properly consider the issue of whether the lease had terminated, that the lease indeed had terminated upon the service of the notice to quit, and that it was not revived by the stipulation. Accordingly, the Bankruptcy Court did not err in granting A&F's motion for relief from stay nor in denying Sakon's various motions to the extent they sought to factor the terminated commercial lease into Sakon's plan of reorganization by way of assumption or execution.

### Conversion to Chapter 7 bankruptcy

Sakon argues that the Bankruptcy Court erred in converting his case to a Chapter 7 proceeding because, besides Sakon's "minor expenses," "[t]here was no other evidence offered by the town as to a substantial and continuing diminution of value." Doc. #22 at 17. He also argues that the KGAK appraisal provides evidence of substantial value in his estate. *Ibid*.

"The bankruptcy court has authority to convert a Chapter 11 proceeding to a case under Chapter 7 for cause, after notice and hearing, where such conversion is in the best interests of creditors and the estate." *In re Lynch*, 795 F. App'x at 59 (citing 11 U.S.C. § 1112). Under 11 U.S.C. § 1112(b)(4), there are many potential factors for finding "cause," including "substantial

or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

The Bankruptcy Court had ample evidence to convert Sakon's case to a Chapter 7 proceeding under this standard. As an initial matter, Sakon's argument is predicated on the long-term ground lease being part of his estate. He does not dispute the Town's valuation of the three properties he owns, but he argues that the Bankruptcy Court erred by not relying on the KGAK valuation of $11.4 million for the assemblage. Doc. #22 at 17. For the reasons explained above, the Bankruptcy Court could not assume the previously-leased property into the estate, and therefore it was properly excluded from the valuation of his estate. Sakon presents no evidence to show the sustainability of his estate if it does not include the leased property. Indeed, Sakon concedes "[w]ithout the assemblage, there is evidence the estate is upside down." Doc. #29 at 9.[6]

Moreover, the Bankruptcy Court based its ruling on uncontroverted evidence that Sakon has current expenses greater than his limited income, that his assets have declined over the course of the bankruptcy proceeding, and that his liabilities have continued to accrue. Doc. #1-1 at 9-10. This was sufficient to demonstrate a continuing diminution of his estate. Sakon misstates the relevant standard as a "substantial *and* continuing diminution" of the bankruptcy estate, Doc. #22 at 17, but under 11 U.S.C. § 1112(b)(4) only a showing of a "substantial *or* continuing loss to or diminution of the estate" is needed to find cause to convert to Chapter 7. At oral argument, Sakon again downplayed the substantiality of the decline in his assets, but did not contradict that

---

[6] Sakon also argues "[t]he court should have granted the motion to assume and provided a deadline for the assumption to be consummated. … If the monies do not arrive, the lease cannot be assumed and there is no basis for this appeal." Doc. #29 at 7. This argument, though incorrect that the Bankruptcy Court should have granted the motion to assume, effectively concedes that if payment under the stipulation was not made, "there is no basis for this appeal."

his assets have declined as indicated on his financial statements submitted to the Bankruptcy Court.

Sakon's arguments related to developing the assemblage implicitly suggest that the estate can be rehabilitated, but he presents no grounds for rehabilitation without possession of the leased property. Therefore, the Bankruptcy Court reasonably concluded that Sakon's estate has no prospects for rehabilitation because he "has simply failed to demonstrate that he has any tangible capitalization, enforceable financing, or cash flow that can support his current obligations or plan objectives." Doc. #1-1 at 12.

Likewise, the Bankruptcy Court reasonably determined that it is in the creditors' best interests for his case to be converted to a Chapter 7 proceeding given Sakon's substantial, increasing liabilities and Sakon's delay tactics. Doc. #1-1 at 14-15. Apart from his arguments that errantly rely on a right to assume the lease as part of his estate, Sakon does not present any evidence or argument to dispute this conclusion.

Finally, the Bankruptcy Court fulfilled its notice and hearing requirement under 11 U.S.C. § 1112(b)(1) with the hearing of April 9, 2020 and other hearings. Sakon argues that "[b]y denying [him] the rights to an evidentiary hearing prior to the conversion of the case to a Chapter 7, the lower court effectively denied [him] his rights to present a reorganization plan and the debtor's rights to due process of law as to the status of his permits." Doc. #22 at 30. He also presents several other issues which he argues the Bankruptcy Court erred by not holding evidentiary hearings on before granting the motion to convert, including the value of his property, the alleged misconduct and sabotage by Town officials, whether the notice to quit was operative, and whether Sakon had credible financial support. *Id*. at 4-5, 18-22, 28-29. In addition,

Sakon argues the court erred by denying his motion to subpoena the Town's zoning enforcement officer. *Id*. at 33.

But due process does not require a full evidentiary hearing before deciding a motion to convert if there is an adequate basis for the Bankruptcy Court to rule on. In particular, "a full evidentiary hearing is not required as long as the record permits the bankruptcy court to draw the necessary inferences to determine cause" for a Chapter 7 conversion. *In re Lynch*, 795 F. App'x at 59 (internal quotations and citation omitted); *see also In re C-TC 9th Ave. Partnership*, 113 F.3d 1304, 1313 (2d Cir. 1997) ("we find that the bankruptcy court's election to decide the bad faith issue without a formal evidentiary hearing was within its discretion; the record provided ample evidence on which the court could make such a decision"); *In re Sillerman*, 605 B.R. 631, 638 (Bankr. S.D.N.Y. 2019) ("Because the record evidence (much of which is uncontroverted), the undisputed facts, the case docket and the admissions by the Debtor provide clear and convincing evidence to support a finding of 'cause' to appoint a trustee or to convert, there is no need for an evidentiary hearing.").

Sakon received several hearings throughout the bankruptcy proceeding, including a hearing on the motion to convert on April 9, 2020. The Bankruptcy Court had sufficient grounds to decide the motion on the basis of the undisputed evidence and documents in the record, the hearings that were held on the motions, and Sakon's own concessions. Although much of Sakon's briefing focuses on his allegations against the Town, there is no requirement that the Bankruptcy Court hold an evidentiary hearing on those issues, especially given that the alleged sabotage of Sakon's financing took place subsequent to the lease being terminated. Sakon does not establish how any evidence that would be uncovered through the evidentiary hearings or

subpoenas would be relevant and material to the determination of the motion to convert or whether the lease was terminated pre-petition when A&F served its notice to quit.

Therefore, the Bankruptcy Court did not err when it concluded that Sakon "has been fully, sufficiently and frequently heard, and had ample opportunities to sufficiently brief the issues and respond to pending motions." Doc. #1-1 at 16. The Bankruptcy Court was within its discretion when it concluded Sakon's evidentiary hearing request and application for subpoenas were "wasteful, duplicative, and dilatory" since he did not provide "any facts which might even colorably affect the outcome of this Motion or are relevant to the underlying merits of the Motion." *Id*. at 16-17.

In sum, the Bankruptcy Court did not abuse its discretion in concluding that it was in the best interest of the creditors to convert the case to a Chapter 7 proceeding. Nor did the Bankruptcy Court abuse its discretion in denying Sakon an evidentiary hearing or subpoenas before ruling on conversion.

### *Motions for reconsideration*

Sakon also appeals the Bankruptcy Court's denial of four of his motions for reconsideration. *See* Doc. #1-2 at 1. A motion for reconsideration is evaluated by the Bankruptcy Court under the same strict standard as Fed. R. Civ. P. 60. *See* Fed. R. Bankr. P. 9024. "Motions for reconsideration are disfavored unless a party can show that the Court overlooked facts or law in a manner that has led to a clear error or manifest injustice. A motion for reconsideration is not an occasion for a losing party simply to re-litigate arguments that were previously raised and considered by the Court." *Grand River Enterprises Six Nations, Ltd. v. Biello*, 2020 WL 1027803, at *3 (D. Conn. 2020).

As the Bankruptcy Court noted, Sakon's arguments related to his motions for reconsideration are "reducible" to his claims that the lease was never terminated, or else was reinstated by the state court stipulation. Doc. #1-2 at 3. Sakon does not present any arguments related to the Bankruptcy Court's denial of his motions for reconsideration that are independent of the arguments already evaluated above. Nor does Sakon present any controlling authority or other evidence not already considered that would meet the strict standard for granting a motion for reconsideration. Accordingly, the Bankruptcy Court did not abuse its discretion in denying Sakon's four motions for reconsideration.

## CONCLUSION

For the reasons set forth above, the decisions of the Bankruptcy Court are each AFFIRMED. The Clerk of Court shall close these cases.

It is so ordered.

Dated at New Haven this 19th day of January 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge